UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**24-20308-CR-BECERRA/TORRES**
CASE NO. _____

18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C)

FILED BY __MP__ D.C.

Jul 23, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**UNITED STATES OF AMERICA**

v.

**AUSTIN MICHAEL TAYLOR,**

  Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. CLU LLC ("CLU") was a Florida corporation created in or around June 2021 with listed offices in Aventura, Florida.

2. Defendant **AUSTIN MICHAEL TAYLOR**, a resident of Sykesville, Maryland, created and managed CLU and was its controlling member.

3. A "digital asset" or "digital token" was an asset issued or transferred using distributed ledger technology, including assets referred to as "cryptocurrencies," "virtual currencies," "digital coins," and "digital tokens." Users of cryptocurrencies sent units of value to and from "addresses," which were unique strings of numbers and letters functioning like public account numbers.

4. A "blockchain" was a distributed public ledger that recorded incoming and outgoing cryptocurrency transactions.

5. An initial coin offering ("ICO") was a capital raising event in which an entity offered investors a unique "digital coin" or "digital token" in exchange for consideration, most commonly a more established cryptocurrency or fiat currency. Such coins were issued on a blockchain and were oftentimes listed on online platforms, called virtual currency exchanges, where they were tradeable for other cryptocurrencies or fiat currencies.

6. Entities offering ICOs created "white papers" which explained to potential investors the venture behind the ICO. Like a stockholder in a traditional publicly traded company, an investing "coinholder" was entitled to certain defined rights related to the underlying venture. This included, for example, asset or profit shares, use of certain services, or voting rights.

## Wire Fraud
## (18 U.S.C. § 1343)

7. From in or around May 2021, and continuing through in or around January 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**AUSTIN MICHAEL TAYLOR,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate and foreign commerce by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

2

**PURPOSE OF THE SCHEME AND ARTIFICE**

9. It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by causing individuals to invest in CLU and its ventures based on materially false and fraudulent statements and concealment and omission of material facts.

**MANNER AND MEANS OF THE SCHEME AND ARTIFICE**

The manner and means by which the defendant sought to accomplish the scheme and artifice to defraud included, among others, the following:

10. **AUSTIN MICHAEL TAYLOR** leveraged his sizeable preexisting social media following to generate interest in an ICO for a digital coin he initially called "CluShare," which he described as backing a project "to provide an ongoing income for charitable projects deemed appropriate for support by our community" of coinholders.

11. **AUSTIN MICHAEL TAYLOR** rebranded CluShare as "CluCoin" immediately before launching CluCoin's ICO. The ICO attracted "investors" from around the world, each of whom deposited funds to a cryptocurrency address associated with the ICO.

12. **AUSTIN MICHAEL TAYLOR** told investors ahead of the ICO that a portion of the investor funds would ultimately flow into a CluCoin developer cryptocurrency address he controlled. To build investor trust, however, **TAYLOR** told investors that these funds would be used on CluCoin-related projects and configured this developer cryptocurrency address so that he would not have access to it for one year.

13. In conjunction with the CluCoin ICO and to manage CluCoin, **AUSTIN MICHAEL TAYLOR** caused CLU to be incorporated in the Southern District of Florida. At all relevant times, **TAYLOR** controlled CLU's operations, including how CLU spent CluCoin investor funds.

14. After selling a vision of a charitable project to investors ahead of the CluCoin ICO, **AUSTIN MICHAEL TAYLOR** shifted CLU's focus after the ICO to other projects he devised: the minting of nonfungible tokens, the development of a computer game, and the creation of a metaverse platform. Through multiple online communication channels, **TAYLOR** continually reassured investors that CLU was using and would use investor funds on these legitimate projects.

15. To drive interest and investment in CLU, CluCoin, and its related projects, **AUSTIN MICHAEL TAYLOR** organized and paid for an event called "NFTCon: Into the Metaverse," which took place at a hotel in Miami, Florida, on or about April 4 and 5, 2022.

16. Beginning in or around May 2022 and continuing through in and around December 2022, after **AUSTIN MICHAEL TAYLOR** gained the ability to make withdrawals from the cryptocurrency address he controlled into which a portion of the CLU investor funds automatically flowed, **TAYLOR** sent approximately $1.14 million in investor funds to his personal account at a virtual currency exchange and then on to multiple online casinos, where he lost these investor funds gambling.

17. **AUSTIN MICHAEL TAYLOR** never disclosed to investors that he intended to and had gambled away CLU investor funds until on or about January 3, 2023, when **TAYLOR** issued a public apology admitting that he had wrongly gambled investor funds away.

## USE OF THE WIRES

On or about April 12, 2022, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **AUSTIN MICHAEL TAYLOR**, for the purpose of executing and in furtherance of the scheme and artifice to defraud and to obtain money and property by means of materially and false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and

cause to be transmitted by wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, that is, a wire transfer for $90,860.39 to pay a hotel in Miami, Florida, in connection with "NFTCon: Into the Metaverse," causing a wire transmission from Maryland to the Southern District of Florida, in violation of Title 18, United States Code, Section 1343.

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C))

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **AUSTIN MICHAEL TAYLOR**, has an interest.

2. Upon conviction of Title 18, United States Code, Section 1343 as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
MANOLO REBOSO
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: **24-20308-CR-BECERRA/TORRES**

v.

CERTIFICATE OF TRIAL ATTORNEY

AUSTIN MICHAEL TAYLOR,

_____/
Defendant.

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- ☒ Miami
- ☐ Key West
- ☐ FTP
- ☐ FTL
- ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)          (Check only one)
   I   ☒ 0 to 5 days         ☐ Petty
   II  ☐ 6 to 10 days        ☐ Minor
   III ☐ 11 to 20 days       ☐ Misdemeanor
   IV  ☐ 21 to 60 days       ☒ Felony
   V   ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
Manolo Reboso
Assistant United States Attorney
FL Bar No.    75397

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** <u>AUSTIN MICHAEL TAYLOR</u>

**Case No:** _____

Count #: 1

Wire Fraud

Title 18, United States Code, Section 1343

*Max. Term of Imprisonment: Twenty (20) Years' Imprisonment
*Mandatory Min. Term of Imprisonment (if applicable): N/A
*Max. Supervised Release: Three (3) Years
*Max. Fine: $2,280,000/$100.00 Special Assessment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| AUSTIN MICHAEL TAYLOR, | ) | **24-20308-CR-BECERRA/TORRES** |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Benjamin Ryan Stechschulte, Esq.
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*